**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ANTHONY FRANCHI, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| NATIONSTAR MORTGAGE HOLDINGS INC., JAY BRAY, ROBERT GIDEL, ROY GUTHRIE, BRETT HAWKINS, MICHAEL D. MALONE, WMIH CORP., and WAND MERGER CORPORATION, ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 13, 2018 (the "Proposed Transaction"), pursuant to which Nationstar Mortgage Holdings Inc. ("Nationstar" or the "Company") will be acquired WMIH Corp. ("Parent") and Wand Merger Corporation ("Merger Sub," and together with Parent, "WMIH").

2. On February 12, 2018, Nationstar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with WMIH. Pursuant to the terms of the Merger Agreement, if Nationstar's stockholders approve the Proposed Transaction, they will be entitled to elect to receive, subject to

proration and adjustment, either $18.00 in cash or 12.7793 shares of Parent common stock for each share of Nationstar common stock they own.

3. On March 23, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nationstar common stock.

9. Defendant Nationstar is a Delaware corporation and maintains its principal

executive offices at 8950 Cypress Waters Boulevard, Coppell, Texas 75019. Nationstar's common stock is traded on the NYSE under the ticker symbol "NSM." Nationstar is a party to the Merger Agreement.

10. Defendant Jay Bray ("Bray") is the Chairman of the Board, and the President and Chief Executive Officer ("CEO") of Nationstar.

11. Defendant Robert Gidel ("Gidel") is a director of Nationstar.

12. Defendant Roy Guthrie ("Guthrie") is a director of Nationstar.

13. Defendant Brett Hawkins ("Hawkins") is a director of Nationstar.

14. Defendant Michael D. Malone ("Malone") is a director of Nationstar.

15. The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

16. Defendant Parent is a Delaware corporation, and a party to the Merger Agreement.

17. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Nationstar (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of February 8, 2018, there were approximately 97,727,755 shares of Nationstar common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

25. Nationstar was formed in 2011. The Company, including its consolidated subsidiaries, earns fees through the delivery of servicing, origination, and transaction based services related primarily to single-family residences throughout the United States. Nationstar is one of the largest residential loan servicers in the United States, operating an integrated residential loan origination platform with a primary focus on customer retention and an array of

complementary services related to the purchase and disposition of residential real estate.

26. The Company's customers include most residential real estate market participants including homeowners, homebuyers, home sellers, investors, and real estate agents. Investors primarily include government sponsored entities ("GSEs") such as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corp ("Freddie Mac"), investors in private-label securitizations, the Government National Mortgage Association ("Ginnie Mae"), as well as organizations owning mortgage servicing rights which engage Nationstar to subservice.

27. Nationstar conducts its operations through three operating segments: servicing, originations, and Xome. The Company is the largest non-bank servicer and third largest residential mortgage servicer in the United States. As of December 31, 2017, Nationstar served approximately 3.3 million customers with an aggregate unpaid principal balance of approximately $508 billion. Nationstar's originations segment provides integrated mortgage services primarily to its existing servicing customers through its direct-to-consumer platform. The Xome segment is a leading provider of technology and data-enhanced solutions to home buyers, home sellers, real estate professionals, and companies engaged in the origination and/or servicing of mortgage loans.

28. In August 2017, the Company rebranded its operating company, Nationstar Mortgage LLC, to "Mr. Cooper" with the goal of reinventing the mortgage experience and keeping the dream of homeownership alive. Nationstar also launched a new website and mobile application with more user-friendly tools and features and moved its international call center operations back to the United States.

29. On February 12, 2018, following the approval of the Proposed Transaction by a special committee of Nationstar directors (the "Special Committee"), the Individual Defendants

caused the Company to enter into the Merger Agreement with WMIH. The Merger Agreement provides that, upon completion of the Proposed Transaction, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly-owned subsidiary of Parent.

30. Pursuant to the terms of the Merger Agreement, Nationstar's stockholders will receive, at their election, either $18.00 in cash or 12.7793 shares of Parent common stock for each share of Nationstar common stock they own, subject in each case to pro rata cutbacks to the extent cash or stock is oversubscribed. The aggregate amount of cash to be issued as merger consideration in the Proposed Transaction will be approximately $1.226 billion. The Company's stockholders must make a cash or stock election at least three business days prior to the closing date, and election forms will be mailed at least twenty business days prior to the election deadline.

31. The Proposed Transaction is conditioned upon, among other things, the adoption of the Merger Agreement by the holders of a majority of Nationstar's outstanding common stock, and the approval of the issuance of Parent common stock in the Proposed Transaction by a majority of all votes cast by holders of outstanding shares of Parent common stock and preferred stock voting on an as-converted basis.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

32. On March 23, 2018, defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

33. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

34. The Registration Statement omits material information regarding Nationstar's and the combined company's financial projections, and the valuation analyses performed by the

Board's and the Special Committee's financial advisors in connection with the Proposed Transaction, Citigroup Global Markets Inc. ("Citi") and PJT Partners LP ("PJT Partners"), respectively.

35.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36.     Defendants failed to disclose certain critical financial projections of Nationstar and the combined company (the "Pro Forma Projections") that were used by each of the financial advisors in their valuation analyses to support their respective "fairness opinions."  Currently, the Registration Statement only discloses certain of Nationstar's projections for years 2018 through 2021, including revenue, expenses, and adjusted *pre*-tax income.

37.     The Registration Statement, however, fails to disclose certain important Nationstar projections that were used in the bankers' valuation analyses and fails to disclose *any* of the Pro Forma Projections.  For example, in performing its Dividend Discount Analysis, Citi used Nationstar's and the pro forma combined company's projected "after-tax cash flows" and earnings through 2022.  In performing its Discounted Equity Value Analysis, PJT used Nationstar's and the pro forma combined company's projected after-tax net income through 2022 and projected after-tax book value through 2021.

38.     Additionally, in performing their respective valuation analyses of the pro forma

combined company, the bankers used estimates of Parent's net operating loss tax carryforwards ("NOLs") and certain other tax attributes of Parent that were expected as a result of the Proposed Transaction.

39. Despite being key inputs in the bankers' respective valuation analyses, defendants failed to disclose any of these important projections to stockholders in the Registration Statement.

40. Further, the Registration Statement discloses Nationstar's projections of non-GAAP (generally accepted accounting principles) adjusted pre-tax income, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate this non-GAAP measure or otherwise reconcile the non-GAAP projections to the most comparable GAAP measure. This information is necessary to avoid misleading stockholders, who otherwise might believe that the disclosed projections of adjusted pre-tax income are the same as projections of net income that are calculated in accordance with GAAP.

41. With respect to Citi's Selected Companies Analysis, the Registration Statement fails to disclose: (i) the individual multiples for each of the "illustrative companies" observed by Citi in its analysis; and (ii) the two-year forward earnings of Nationstar and the pro forma combined company, as used in Citi's analysis.

42. With respect to Citi's Dividend Discount Analysis, the Registration Statement fails to disclose: (i) Nationstar's and the pro forma combined company's projected "after-tax cash flows" and earnings through 2022, as used by Citi in its analysis; (ii) the "Estimated Tax Saving;" (iii) Citi's basis for using terminal exit multiples of 7.1x to 8.4x; (iv) the manner in which Citi calculated the discount rates of 11.0% to 12.7%, as well as the specific inputs and assumptions underlying the discount rates used by Citi in its analysis; and (v) the perpetuity growth rates implied by Citi's analysis.

43. With respect to PJT's Discounted Equity Value Analysis of Nationstar, the Registration Statement fails to disclose: (i) Nationstar's after-tax net income through 2022, as well as the assumed growth rate used to calculate Nationstar's 2022 after-tax net income, as used by PJT in its analyses; (ii) Nationstar's after-tax book value through 2021; (iii) PJT's basis for selecting the chosen EPS and BVPS terminal exit multiples; (iv) the specific inputs and assumptions underlying the discount rates used by PJT in its analysis; and (v) the perpetuity growth rates implied by PJT's analyses.

44. With respect to PJT's Discounted Equity Value Analysis of the pro forma combined company, the Registration Statement fails to disclose: (i) the estimated value of the NOLs and certain other tax attributes of WMIH following completion of the merger for calendar years 2018 through 2030; and (ii) the specific inputs and assumptions underlying the discount rates used by PJT in its analysis.

45. With respect to PJT's Selected Comparable Company Analysis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by PJT in its analysis.

46. With respect to PJT's Selected Precedent Transaction Analysis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by PJT in its analysis.

47. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Certain Nationstar Financial Forecasts; (ii) Opinion of the Financial Advisor to the Nationstar Board of Directors; (iii) Opinion of the Financial Advisor to the Nationstar Special Committee; and (iv) Certain WMIH Financial Forecasts.

48. The Registration Statement omits material information regarding potential conflicts of interest of the Company's executive officers and directors.

49. The Registration Statement indicates that, in connection with the Proposed Transaction: (i) four (out of five) of Nationstar's current directors, including its CEO Bray, will be appointed to Parent's board of directors; (ii) Nationstar entered into severance agreements with Nationstar's executive officers that provide for millions of dollars' worth of payments and benefits upon a termination of the executives' employment in connection with the Proposed Transaction; and (iii) Nationstar entered into retention bonus agreements with Nationstar's executive officers that provide for millions of dollars' worth of cash bonus payments to the executive officers in connection with the Proposed Transaction.

50. The Registration Statement, however, fails to disclose the nature, timing, and substance of any discussions or overtures regarding post-merger directorships or payments during the negotiations leading to the execution of the Merger Agreement, including who participated in the discussions. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

51. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; and (ii) Interests of Nationstar Directors and Executive Officers in the Merger.

52. The Registration Statement omits material information relating to potential conflicts of interest of Citi and PJT, as well as the Board's additional financial advisors that it

engaged in connection with the Proposed Transaction, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") and Morgan Stanley & Co., LLC ("Morgan Stanley"). Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

53. The Registration Statement discloses certain services that each of Citi and PJT have provided to Nationstar, WMIH, or their respective affiliates or major stockholders, but it fails to disclose the amount of compensation that each banker received, or is expected to receive, for the services or transactions. Specifically, with respect to Citi, the Registration Statement states:

> Citi and/or certain of Citi's affiliates are also a lender to or participant in certain credit facilities of Nationstar, certain members of the Fortress Group and certain members of the KKR Group. In addition, as disclosed to the Nationstar board of directors, in March 2017 New Residential Investment Corp., a member of the Fortress Group, acquired certain mortgage servicing rights from CitiMortgage, Inc., an affiliate of Citi.

54. With respect to PJT, the Registration Statement states:

> During the past two years preceding the date of its written opinion, PJT Partners and certain of its affiliated entities advised (i) an entity in which Fortress and its affiliates maintain a significant investment on matters unrelated to the merger, for which PJT Partners may in the future receive customary compensation, and (ii) KKR and its affiliates and certain entities in which KKR and its affiliates have an investment, in each case on matters unrelated to the merger, for which PJT Partners has received or may in the future receive customary compensation.

55. The Registration Statement must disclose the amount of compensation that each of Citi and PJT has earned, or is expected to earn, in connection with the foregoing services or transactions.

56. Further, the Registration Statement indicates that the Board engaged Houlihan Lokey and Morgan Stanley to assist Nationstar in exploring potential strategic alternatives and to assist in negotiating the Proposed Transaction with Parent. The Registration Statement, however,

fails to disclose the terms of the engagement between Nationstar, on the one hand, and Houlihan Lokey and Morgan Stanley, on the other hand, including the amount of compensation that each banker has earned or is expected to earn in connection with those services. Additionally, the Registration Statement fails to disclose whether either of Houlihan Lokey or Morgan Stanley have provided any services to Nationstar, WMIH, or their respective affiliates or major stockholders in the past, and if so, the Registration Statement must disclose the nature and timing of those services, as well as the amount of compensation that the bankers earned in connection with those past engagements.

57. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Opinion of the Financial Advisor to the Nationstar Board of Directors; and (iii) Opinion of the Financial Advisor to the Nationstar Special Committee.

58. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Nationstar's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nationstar**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Nationstar is liable as the issuer of these statements.

61. The Registration Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

62. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

63. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

64. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

65. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

66. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and WMIH

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants and WMIH acted as controlling persons of Nationstar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions

as officers and/or directors of Nationstar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

69. Each of the Individual Defendants and WMIH was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

71. WMIH also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

72. By virtue of the foregoing, the Individual Defendants and WMIH violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants and WMIH had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 8, 2018                                    **KENDALL LAW GROUP, PLLC**

                                                      By: */s/ Joe Kendall*

**OF COUNSEL:**                                       Joe Kendall
                                                      Texas Bar No. 11260700
**RIGRODSKY & LONG, P.A.**                            jkendall@kendalllawgroup.com
300 Delaware Avenue, Suite 1220                       Jamie J. McKey
Wilmington, DE 19801                                  Texas Bar No. 24045262
Telephone: (302) 295-5310                             jmckey@kendalllawgroup.com
Facsimile: (302) 654-7530                             3232 McKinney Avenue, Suite 700
                                                      Dallas, TX 75204
**RM LAW, P.C.**                                      Telephone: (214) 744-3000
1055 Westlakes Drive, Suite 300                       Facsimile: (214) 744-3015
Berwyn, PA 19312
Telephone: (484) 324-6800                             *Attorneys for Plaintiff*
Facsimile: (484) 631-1305